**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCANLAN KEMPER BARD COMPANIES, an Oregon corporation, ROYAL INSURANCE COMPANY OF AMERICA, an Illinois corporation,<br><br>    Third-Party Plaintiffs,<br><br>  v.<br><br>EMG, INC., a Maryland corporation,<br><br>    Third-Party Defendant.<br><br>AND RELATED CROSS-ACTION | No. C-03-1003 SC<br><br>ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY <u>ADJUDICATION</u> |

## I. Introduction

Third-Party Plaintiff Scanlan Kemper Bard ("Plaintiff" or "SKB") and its insurer Royal Insurance Company of America ("Royal") seek to recover from Third-Party Defendant Environmental Management Group, Inc. ("EMG" or "Defendant") monies that SKB and Royal paid to settle an action brought by property owners against SKB.

Defendant EMG now moves for summary judgment on each of the contract-based claims against it, on the basis that an anti-assignment and exculpatory clause forecloses any liability based on the subject of the contract. EMG also moves for summary judgment on Plaintiff's fraudulent inducement claim on the grounds

that Plaintiff has failed to demonstrate that an issue of material fact exists with regard to these claims.  Finally, in the event that the Court does not grant summary judgment in EMG's favor, EMG also seeks summary adjudication of several issues in advance of trial, including whether Maryland law applies to every claim against EMG and whether a limitation of liability clause in the contract caps EMG's potential liability at $50,000.

Plaintiff SKB opposes EMG's motion in its entirety and argues that each claim should proceed to trial.  Moreover, SKB denies that the limitation of liability clause applies to either the negligent misrepresentation or fraudulent inducement claims, and that — despite a choice of law provision in favor of Maryland law — California public policy favors applying a California statute prohibiting exculpatory clauses from exempting liability for fraud.

Having reviewed the parties' moving papers, as well as the additional evidentiary submissions and supplementary papers and declarations, and for the reasons discussed further herein, the Court denies Defendant's motion for summary judgment as to each of the four claims brought by Plaintiff.  The Court grants Defendant's motion for summary adjudication as to several issues.

**II.  Background**

Plaintiff SKB is a real estate merchant bank located in Portland, Oregon.  SKB identifies potential commercial real estate investment properties and lines up investors to acquire the properties.  Defendant EMG is a firm that conducts property

2

condition assessments and evaluations for prospective purchasers of commercial real estate.

In 2000, SKB identified the Orinda Theater Square as a potential investment. The Orinda Theater Square is a large commercial complex located in Orinda, California. It includes the Orinda Theater as well as several other buildings housing business and retail tenants.

In order to purchase the Orinda Theater Square, SKB secured 43 separate investors. Most investors contributed capital to Orinda Investments, LLC, a limited liability company established specifically to facilitate the purchase of the Orinda Theater Square property. Orinda Investments, LLC joined with Main Street Holdings, the LLC of the largest individual investor, Steven Thomas, to purchase the property for $18.275 million.

SKB entered into a purchase agreement (the "purchase agreement") with the sellers of the Orinda property dated June 8, 2000. As part of the due diligence prior to purchase, SKB hired EMG to conduct a property inspection of the Orinda Theater Square property. SKB and EMG entered into a written contract (the "property inspection contract"), and SKB agreed to pay EMG $6,000 for its property inspection services. On April 5 and 6, 2000, an EMG representative conducted the inspection of the Orinda property and subsequently prepared a "Property Condition Evaluation" dated July 20, 2000. The evaluation stated that the building was in "good overall condition" and estimated that the property warranted $17,855 in immediate repair costs, $17,500 in short term expenditures and $173,000 in long term reserves. Pl. Ex. A.

Under the purchase agreement, the due diligence period lasted through August 25, 2000. Although SKB was initially designated as the purchaser of the property, prior to closing SKB assigned its rights under the purchase agreement to Main Street Holdings and Orinda Investments. Main Street Holdings and Orinda Investments became the owners of the Orinda property, and remain so today. Under the terms of the assignment, SKB retained a limited equity interest in the property.

In the Fall of 2001, extensive water damage was discovered throughout the Orinda property. This damage has been repaired at a cost of at least $3 million. In 2003, Investors Steven Thomas and Main Street Holdings sued SKB for failing to conduct adequate due diligence. SKB, through its insurer Royal, settled with the investors for $3 million. As part of this settlement, Main Street Holdings, Steven Thomas and Orinda Investments assigned to Royal any and all claims they might have against the property inspector, EMG.

SKB and Royal in turn filed a complaint against EMG. In the second amended complaint, SKB and Royal allege breach of the property inspection contract, negligence, negligent misrepresentation and fraud in the inducement of the property inspection contract. Now before the Court is EMG's motion for summary judgment, or in the alternative, summary adjudication of these claims. SKB opposes EMG's motion in its entirety.

4

**III. Legal Standard**

A.  Summary Judgment

The standards for considering a motion for summary judgment are well settled.  Summary judgment is proper only when there is no genuine issue of material fact and, when viewing the evidence in the light most favorable to the nonmoving party, the movant is clearly entitled to prevail as a matter of law.  See Fed. R. Civ. P. 56(c); Cleary v. News Corp., 30 F.3d 1255, 1259 (9th Cir. 1994).  The moving party bears the initial burden of informing the Court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Once a summary judgment motion is made and properly supported, the nonmoving party may not rest on the mere allegations of its pleadings, but must set forth specific facts showing that there is a genuine issue for trial.  See Fed R. Civ. P. 56(e); Celotex, 477 U.S. at 323.  In addition, to withstand a proper motion for summary judgment, the nonmoving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

The standard applied to a motion seeking partial summary judgment is identical to that for a motion seeking summary judgment of the entire case.  Medrano v. D'Arrigo Bros. of California, 336 F. Supp. 2d 1053, 1056 (N.D. Cal. 2004).

5

Moreover, the Court may grant partial summary judgment to determine that certain issues shall be deemed established in advance of the trial. "[T]he purpose of summary judgment is met when the summary adjudication of preliminary issues ... helps to focus the issues to be litigated, thus conserving judicial resources." <u>Advanced Semiconductor Materials America, Inc. v. Applied Materials</u>, 1995 WL 419747 (N.D. Cal. 1995). A grant of partial summary judgment is an interlocutory — not final — decision, and accordingly may be reviewed by this Court at any time prior to entry of judgment. <u>National Rural Telecommunications Co-op. v. DIRECTV, Inc.</u>, 319 F.Supp.2d 1059 (C.D. Cal. 2003).

B.   Choice of Law

When a case comes before a federal court under its diversity jurisdiction, the court applies the conflict of law principles of its forum state. <u>Sarlot-Kantarjian v. First Pennsylvania Mortgage Trust,</u> 599 F.2d 915, 917 (9th Cir. 1979). Under California choice of law principles, when a contract contains a valid choice of law provision, California will apply the substantive law designated by the contract unless the transaction falls under either of two exceptions contained in the Restatement (Second) of Conflict of Laws § 187(2). <u>Nedlloyd Lines B.V. v. Superior Court</u>, 3 Cal.4th 459 (Cal. 1992). Under section 187(2), the choice of law provision will not be applied when 1) "the chosen state has no substantial relationship to the parties or the transaction and there is no other reason for the parties choice" or 2) "application of the law of the chosen state would be contrary to a

6

fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which ... would be the state of the applicable law in the absence of an effective choice of law by the parties." Restatement (Second) of Conflict of Laws § 187(2) (1988). A separate choice-of-law inquiry must be made with respect to each issue in a case. S.A. Empresa De Viacao (Varig Airlines) v. Boeing Co., 641 F.2d 746, 749 (9th Cir. 1981).

## IV. Discussion

EMG moves for summary judgment on several grounds: 1) that anti-assignment and exculpatory clauses in its contract with SKB bar most claims made against EMG; 2) that a limitation of liability clause in the contract limits EMG's potential liability to an aggregate of $50,000; and 3) that no genuine issue of material fact exists to support the claim for fraudulent inducement of contract. The Court will discuss each of these in turn.[1]

A. Anti-assignment and Exculpatory Clauses

EMG inspected the Orinda Property pursuant to a written agreement with SKB. This property inspection contract includes a

---

[1] EMG also moves for summary adjudication that Maryland law governs each issue in this case. Neither party disputes that the contract at issue contains a valid choice-of-law provision designating the law of Maryland. Moreover, Plaintiff SKB objects to the application of Maryland law only as to its claim for negligent misrepresentation. Finding the choice-of-law provision enforceable under California choice-of-law rules, this Court will apply Maryland law to the resolution of all other issues without further discussion. The law applicable to Plaintiff's claim for negligent misrepresentation is discussed more fully herein.

7

1    clause entitled "Reliance; Assignment," which states:

> The Services, the reports and other related work product provided by EMG may not be relied upon by any person or entity, other than the Client, without the advance written consent of EMG. No third party beneficiaries are intended. The Client shall not assign the Proposal, any report or any related work product, without the prior written consent of EMG. Any unauthorized reuse or redistribution of EMG's work product or reports shall be at the Client's and recipient's sole risk, without liability to EMG. EMG shall not assign its obligations under the Proposal; however, EMG may employ, by subcontract, suitably trained persons or entities acceptable to EMG to perform the Services.

Def. Ex. A. at 15. EMG asserts that SKB's assignment of its rights under the purchase agreement to Main Street Holdings and Orinda Investments was a violation of this clause in the property inspection contract, exculpating EMG from any liability based on the contract. For several reasons, this position in untenable.

To begin, EMG has produced no evidence that SKB's assignment of its rights under the *purchase agreement* included an assignment of SKB's rights under the entirely separate *property inspection contract*. Moreover, prior to assigning its rights under the purchase agreement, SKB represented to Main Street Holdings and Orinda Investments that it had completed due diligence and had ascertained that the property was free of significant defect. As a result, Main Street Holdings and Orinda Investments relied on the representations of SKB, and were limited to recovering for their damages from SKB for failure to conduct adequate due diligence — which, in fact, they did. That SKB is now seeking to recover from EMG for breach of the property inspection contract undercuts EMG's argument that SKB assigned away its rights under this contract. Because EMG has not proved that any assignment of

8

its contract with SKB was made, it is not entitled to summary judgment based on the anti-assignment clause.

EMG further argues that, notwithstanding the anti-assignment clause, the above language also contains an "exculpatory" provision which absolves EMG of liability if any third party "relies" on EMG's work product without prior authorization. Maryland law clearly permits parties to include exculpatory clauses in their agreements, and Maryland courts will generally enforce such agreements absent public policy or statutory conflicts. See, e.g., Wolf v. Ford, 335 Md. 525, 521 (1994). However, "[b]ecause such clauses bring about harsh results, Maryland narrowly construes exculpatory clauses...." Cornell v. Council of Unit Owners Hawaiian Village Condominiums, Inc., 983 F.Supp. 640, 643 (D. Md. 1997). Based on the language of the clause in the property inspection contract, the Court finds that EMG would be relieved of liability only if it could affirmatively show 1) that SKB reproduced the EMG report and redistributed it to the investors in order to induce them to invest in the property, and 2) that the investors specifically relied on the EMG report in deciding to purchase the Orinda property. This Court finds that EMG has not demonstrated any such redistribution and reliance. At most, EMG has shown that the managing agent of Orinda Investments was also vice-president of SKB, and as such was familiar with the EMG report. However, SKB has demonstrated that it had sole responsibility for conducting due diligence and for evaluating and relying on EMG's report prior to the assignation of its rights under the purchase agreement to the investors. Pl. Opp. at 14.;

9

Pl. Ex. L, M. The available evidence indicates only that the investors relied on SKB to conduct the due diligence, which is not prohibited under the property inspection contract. Consequently, EMG has failed to show that there was any "unauthorized reuse or redistribution of EMG's work product or reports," and summary judgment on this ground is inappropriate.[2]

B.   Limitation of Liability

EMG also moves for summary adjudication that SKB cannot recover more than $50,000 for claims related to the property inspection contract because that contract contains a valid limitation of liability clause. The relevant clause, entitled "Professional Liability," states:

> EMG's liability, and that of its officers, directors, employees, agents and subcontractors, to the Client or to any third party, due to any negligent professional acts, errors or omissions, or breach of contract by EMG, shall be limited to an aggregate of $50,000, or EMG's total charges for its Services (whichever is greater)....

Def. Ex. A. As noted above, Maryland law presumes such clauses to be valid based on a public policy favoring freedom of contract. Adloo v. H.T. Brown Real Estate, Inc., 344 Md. 254, 259 (1996). In fact, SKB does not deny that the limitation of liability clause applies to its claims for breach of contract and negligence. For

---

[2] As the movant, EMG bears the burden of demonstrating the absence of a triable issue of material fact on each claim for which it seeks summary judgment. Celotex, 477 U.S. at 323. Beyond its argument that the anti-assignment and exculpatory clauses in the contract bar SKB's breach of contract, negligence and negligent misrepresentation claims, EMG failed to produce any evidence tending to show an absence of issues of material fact. Accordingly, this Court finds that issues of material fact exist as to these claims, which also preclude summary judgment.

its part, EMG concedes that the limitation of liability clause cannot apply to the claim for fraudulent inducement, as courts generally do not allow parties to contract out of liability for their fraudulent or intentional conduct. See, e.g., Wolf, 335 Md. at 526. Accordingly, this Court finds that the limitation of liability clause operates to limit EMG's potential liability to SKB for breach of contract and negligence to a maximum of $50,000. Additionally, this Court finds that the limitation of liability clause is inapplicable to SKB's fraudulent inducement claim.

### i. Negligent Misrepresentation

The question of whether the limitation of liability clause in the property inspection contract is applicable to the remaining claim for negligent misrepresentation requires further analysis. EMG asserts that Maryland law controls, and in Maryland, a limitation of liability clause is enforceable as to a claim for negligent misrepresentation. SKB seeks to avoid this conclusion by applying California law, which it reads to disallow such a cap on liability for negligent misrepresentation.

In California, courts have found that negligent misrepresentation "requires intent to induce reliance" and is thus a "subspecies or variety of fraud...." Chatton v. National Union Fire Ins. Co., 10 Cal.App. 4th 846 (1992). Accordingly, California courts have invalidated contractual clauses exempting a party from liability for negligent misrepresentation pursuant to California Civil Code § 1668, which makes contracts exempting one

11

1   from liability for one's own fraud unlawful.[3]  Blankenhiem v. E.F.
2   Hutton & Co., 217 Cal.App.3d 1463, 1472-73 (9th Cir. 1999); Cal.
3   Civ. Code § 1668.

4   On the other hand, Maryland law deems negligent
5   misrepresentation a "form of negligence," Sheets v. Brethren
6   Mutual Insurance Company, 342 Md. 634, 646 (1996), and Maryland
7   courts have "repeatedly refused to expand the tort [of fraud] to
8   encompass liability for negligent or grossly negligent
9   representations." Ellerin v. Fairfax Savings, 337 Md. 216, 238-
10  239 (1995).  Thus, Maryland courts enforce contractual provisions
11  limiting liability for negligent misrepresentation.

12  Whether the limitation of liability clause applies to the
13  negligent misrepresentation claim, therefore, will depend on which
14  state's law applies.  Although the property inspection contract
15  contains a choice of law provision specifying that Maryland law
16  will govern any disputes based on the contract, Plaintiff argues
17  that California's strong interest in applying § 1668 trumps this
18  provision.  This Court finds that the circumstances of this case
19  do not indicate that California has such an interest in applying
20  its law that it should override the parties' own choice of law
21  provision.

22  To begin, Plaintiff correctly notes that this Court, sitting
23  in diversity, must apply the choice of law rules of California,

---

[3]Section 1668 states, "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." Cal. CCP § 1668.

12

the forum state. <u>Ticknor v. Choice Hotels Int'l.</u>, 265 F.3d 931, 937 (9th Cir. 2001). Because California choice of law rules generally enforce contractual choice of law provisions, Maryland law presumably applies to the instant matter. However, as was noted above, an exception to this general rule may be made where application of the chosen law would contravene a fundamental policy of the state whose law would have applied absent the choice of law provision. <u>Nedlloyd Lines B.V. v. Superior Court</u>, 3 Cal. 4th 459, 465-466 (1992). In such a case, the law of the state whose public policy is threatened will apply, provided that this state also has a materially greater interest in regulating the issue at hand. <u>Id.</u> Consequently, California law will be applied to this issue only if California's public policy is threatened and California has a materially greater interest than Maryland in regulating the issue at hand.

Plaintiff asserts that Civil Code section 1668 reflects "the express statutory policy" of California. <u>Neubauer v. Goldfarb</u>, 108 Cal.App.4th 47, 56 (2003). However, the Ninth Circuit has observed that section 1668 was designed to protect California's citizens. <u>S.A. Impressa de Viacao</u>, 641 F.2d at 753. This Court finds that application of Maryland law will not necessarily contravene California's public policy, where no California citizens are involved.

On the other hand, Maryland clearly has a strong interest in having its law applied to this matter. This case involves two corporate citizens hailing from the states of Maryland and Washington. These private, sophisticated parties contracted in

13

advance to have any disputes arising under the contract governed by the law of Maryland, despite the fact that the subject of the contract is property located in California. As Defendant EMG is a Maryland corporation, Maryland has a strong interest in seeing that the legitimate expectations of its citizen are upheld.

The interest of California, on the other hand, is less compelling. California has no citizens to protect, and this private contract does not implicate the public interest. Cf. Neubauer, 108 Cal.App.4th at 56 ("the buying and selling of corporate stock are transactions which affect a public interest"). In S.A. Impressa de Viacao, where neither party was a California citizen, the Ninth Circuit held that Washington state, whose law had been designated by the contractual choice of law provision and whose citizen was a party to that contract, had a greater interest in having its law applied than did California. S.A. Impressa de Viacao, 641 F.2d at 753.

This Court finds that, in the present dispute, Maryland's interest in having its law applied is materially greater than that of California. Section 1668 does not provide a compelling interest in this case because Section 1668 was not designed to protect foreign citizens purchasing land in California. Moreover, to impose California's law on these parties would frustrate their valid contractual expectations. And although California clearly has some interest in regulating contracts to be executed within California, under these circumstances, California's interest is not materially greater than Maryland's interest in having the legitimate contractual expectations of a Maryland citizen upheld.

14

C.   Fraudulent Inducement

Finally, we turn to SKB's claim against EMG for fraudulent inducement of contract. Plaintiff's potential recovery for this claim is unaffected by the limitation of liability clause in the property inspection contract, because under Maryland law, one may not contract away one's liability for intentional, fraudulent or grossly negligent conduct. Nevertheless, EMG moves for summary judgment on this claim, asserting that no material issue of fact exists on which to proceed to trial.

Under Maryland law, to prove fraud in the inducement of a contract, Plaintiff must prove: 1) that the defendant made a false representation to the plaintiff; 2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth; 3) that the misrepresentation was made for the purpose of defrauding the plaintiff; 4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and 5) that the plaintiff suffered compensable injury resulting from the misrepresentation. Sass v. Andrew, 152 Md.App. 406, 429 (Md. App. 2003)(citations omitted). For a claim of fraudulent inducement in the contract, "a plaintiff can successfully bring a tort action for fraud that is based on false pre-contract promises by the defendant even if ... the pre-contractual promises that constitute the fraud are not mentioned in the written contract." Greenfield v. Heckenbach, 797 A.2d 63, 76 (Md. App. 2002).

Plaintiff supports this claim with evidence of representations made in EMG's written proposal to Plaintiff

15

concerning the extent of the property inspection services that Defendant would provide if hired.  Specifically, Plaintiff demonstrates that EMG's proposal promised a "higher level of discovery" than other property evaluations and that EMG's service would "reduce uncertainty regarding unknown physical deficiencies."  Plaintiff's Ex. H.  Further, EMG acknowledged that SKB, as an equity investor, had "more intense interests in discovery than the interests of other due diligence clients," and represented that its inspector would be "specifically trained" in the type of equity investigation required.  In marketing material, EMG also represented that the Property Condition Evaluation, which it was marketing to SKB and which SKB eventually purchased, was fundamentally different from the less expensive Property Condition Assessment.  In contrast to the Property Condition Assessment, the Property Condition Evaluation required a higher "level of investigation, research, and validation of information..." Plaintiff's Ex. E.  This material stated:

> Given the sensitive nature of property transfers, additional time is apportioned to communicate with the Client prior to, throughout, and following the engagement, in order to ensure specific Client sensitivities are addressed, the appropriate level of due diligence is conducted, and a proactive approach is taken to identifying potential issues.

Id.  To carry out this mandate, the Property Condition Evaluation was said to involve a series of conference calls between the inspector and client.

Plaintiff alleges that EMG's representations were demonstrably false at the time they were made, by contrasting them with statements made by EMG's own inspector, Paul DesMarais.  Mr.

16

DesMarais maintains that EMG's Property Condition Evaluation is not meant to include "discovery" or to "reduce uncertainty regarding unknown physical deficiencies." Plaintiff's Ex. O. Rather, Mr. DesMarais insisted that his responsibility under the contract was only to document "visually observable" problems. Id. EMG never provided the promised conference calls with SKB, and Mr. DesMarais indicated that he had no idea of Plaintiff's status as an equity investor.

In Maryland, "[A] fraud action can only be predicated on misrepresentation of past or existing fact; breach of future promises lies in the realm of contract." Call Carl, Inc., et al. v. BP Oil Company, 554 F.2d 623, (4th Cir. 1977). As a result, EMG's broken promises, without more, are insufficient to support SKB's fraudulent inducement claim. However, "the misrepresentation of one's own intention may constitute the misrepresentation of a present fact...." Weisman v. Connors, 312 Md. 428 (1988). If a jury believes that EMG had no intention of performing to the higher standards set out in EMG's proposals and marketing material, than an action for fraud would lie. Taking this evidence in the light most favorable to Plaintiff, this Court holds that a jury could find that EMG intentionally or recklessly misrepresented the extent of the services its inspector was prepared to provide under the property inspection contract. Accordingly, summary judgment on SKB's claim for fraudulent inducement of contract is not warranted.

17

**V.  Conclusion**

For the reasons articulated above, Defendant's Motion seeking summary judgment on all causes of action in the Second Amended Third-Party Complaint of Plaintiff Scanlon Kemper Bard is HEREBY DENIED.  Neither the anti-assignment nor the exculpatory clause in the property inspection contract precludes SKB from bringing its claims against EMG.  Additionally, issues of material fact exist, which preclude summary judgment on the negligence, breach of contract, negligent misrepresentation and fraudulent inducement claims.  The Court finds, however, that a limitation of liability clause in the property inspection contract is valid and applies to limit EMG's potential liability for the breach of contract, negligence and negligent misrepresentation claims to an aggregate of $50,000.  This clause does not apply to SKB's claim for fraudulent inducement.

**IT IS SO ORDERED.**

Dated: May 18, 2005

                                          /s/ Samuel Conti
                                      UNITED STATES DISTRICT JUDGE